Grace, Appellant, *v.* Westchester Fire Ins. Co., Appellee.

[Cite as Grace v. Westchester Fire Ins. Co., 7 Ohio App. 2d 156.]

(No. 1265—Decided April 28, 1964.)

*Messrs. Meredith, Meredith & Tait,* for appellant.
*Messrs. Cable & Cable,* for appellee.

GUERNSEY, J. On September 14, 1961, a barn owned by the plaintiff, appellant herein, Jay Grace, was destroyed by fire. Prior thereto Grace had applied for and obtained the issuance of three different policies from three different companies pur-

porting to insure him against loss of the barn by fire. The respective policies were issued by each company without knowledge of the issuance of a policy or policies by another company or companies and without knowledge of Grace's intention or attempt to obtain additional insurance from other companies.

The first of the policies was issued by the defendant, appellee herein, Westchester Fire Insurance Company, and contained the following condition:

"OTHER INSURANCE: Unless otherwise provided in writing added hereto, other insurance covering on any building which is the subject of insurance under this policy, is prohibited. If during the term of this policy, the insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy shall be suspended and of no effect."

The second of the policies was issued by the Buckeye State Mutual Insurance Association and contained the following condition:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Association shall not be liable for loss occurring:
" * * *

"(d) while the assured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The last of the policies was issued by the Ohio Farmers Insurance Company and contained the following conditions:

"OTHER INSURANCE. Unless otherwise provided in writing added hereto, other insurance covering on any building which is the subject of insurance under this policy, is prohibited. If during the term of this policy, the insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy shall be suspended and of no effect."

Each policy purported to cover the dwelling house on the premises as well as the barn. Subsequent to the loss of the barn, Grace commenced a separate suit against each insurer. No claim has been made in this action against Westchester of fraud on Grace's part. The Common Pleas Court of Allen

County entered its judgment in favor of the defendant insurer finding the quoted clause in its policy to be enforcible and "that the act of the plaintiff, Jay Grace, in taking out other insurance in violation of the clear, reasonable and unambiguous terms of his policy with defendant, causes the defendant's policy to be suspended and of no effect as to any coverage afforded as to the barn building." This is the judgment from which Grace appeals.

Appellant's assignments of error are general and may be summarized that the judgment of the trial court is contrary to law and against the weight of the evidence.

Determination of this appeal involves the consideration of two cases cited by the parties decided by the Supreme Court of Ohio, namely, *Fireman's Ins. Co. of Dayton* v. *Holt, Receiver* (1878), 35 Ohio St. 189, 35 Am. Rep. 601, and *New Jersey Ins. Co.* v. *Ball* (1929), 119 Ohio St. 550. In the former case the condition in the first policy was that "if the said assured, or their assigns, shall hereafter make any other insurance on the same property, and shall not with all reasonable diligence give notice thereof to this company, and have the same indorsed on this instrument by the secretary, or otherwise acknowledged by them in writing, then this policy shall cease and be of no further effect," and the Supreme Court held that:

"A condition in a fire policy against subsequent insurance, is not broken by the taking of subsequent policies by the insured which never took effect by reason of conditions therein contained."

In his opinion in the *Holt case* Chief Justice Gilmore said, among other things:

"* * * Each of the subsequent policies in question is valid upon its face, and, *prima facie*, binding on the parties to it. And, by the terms of the condition upon which its character in this respect depends, it must be either valid or void, as between the parties, and it can occupy no middle ground.

"Having already said that the subsequent policies never took effect between the parties, by reason of the breach of the conditions therein contained, we hold that the condition against further insurance in the policy sued on was not broken by such subsequent policies. The condition contemplates subsequent

*valid* insurance, and is not broken by an *attempt* to obtain further insurance, which was, in legal effect, all that was done by the insured in this case.''

In the *Ball case,* relied upon by defendant, the first policy contained a condition that the insurance should be null and void ''if at the time the loss occurs there be any other insurance covering against the risks assumed by this policy which would attach if this insurance had not been effected,'' and the Supreme Court held that:

''* * * The condition clearly invalidates its insurance, if, at the time of loss, there was other insurance which would attach had the first insurance not been made or effected.''

The Supreme Court did not, however, overrule or modify the law of the *Holt case,* and in his opinion Judge Jones said, in discussing the *Holt case:*

''It must be conceded that the decisions made by various courts of this country in cases touching insurance contracts are both confusing and perplexing. The divergence of authority, however, arises, not from the efforts of the courts to set aside contracts prohibiting additional insurance, where the provisions are definite and clear, but to construe vague or doubtful conditions found in various forms of policy contracts; and, in case the condition is doubtful, the courts following the rule of liberal construction protect the insured where he has secured additional insurance without the consent of the insurer.

''Pursuing the rule of liberal construction, this court, 50 years ago, held a condition in a policy preventing the insured from *making any other insurance* on the property connoted the making of *valid* insurance, and that since the subsequent policy was not valid the first policy became effective. *Fireman's Ins. Co.* v. *Holt, Receiver,* 35 Ohio St. 189, 35 Am. Rep. 601. This decision was doubtless caused by the peculiar clause used in the condition of that policy, * * * .

''Many decisions pro and con have been cited in this case by counsel for both sides. However, as insurance companies change their standard forms of policy from time to time by the insertion of various clauses intended to protect them against over insurance, such decisions are not helpful except where

they construe policies containing conditions similar to those found in the policy of the New Jersey Company in the instant case. * * *''

We gather generally from these two Supreme Court cases, and associated cases, that conditions which void or suspend the coverage of an insurance policy when additional insurance is attempted are usually held valid and enforcible because additional insurance, if effected, will otherwise increase the risk covered by the policy to which the condition pertains by encouraging the insured to become careless in the preservation of his property; that each decision depends upon the clause or clauses peculiar to the policy concerned; that unambiguous conditions are literally construed and enforced; and that ambiguous conditions are liberally construed and enforced so as to protect the insured.

In the *Holt case,* the condition in the first policy purporting to void the policy became operative if ''any other insurance'' was made on the same property, and the opinion held that this contemplated subsequent *valid* insurance. On the other hand, in the *Ball case,* the condition in the first policy purporting to prohibit recovery became operative if at the time of loss there be ''any other insurance * * * which would attach if this insurance had not been effected.'' Thus, in the *Ball case* the subsequent insurance did not have to be *valid* at the time of the loss but only hypothetically *valid* if it would have attached if the first insurance had not been effected. The *Ball case* did not, therefore, overrule the *Holt case,* and they stand for different, but consistent, conclusions, based on the different clauses in the respective first policies in each case.

In the instant case the clause in the Westchester policy purporting to void the policy does so if during the term of the policy the insured shall have ''any such other insurance, whether collectible or not.'' Although we are of the impression that the words, ''whether collectible or not,'' have bearing on whether a claim under the policy may ultimately be collected, which depends on many things, including the solvency of the insurance company and the compliance of the insured with all the conditions of the policy pertaining to the perfection of his claim, we

are, notwithstanding, of the opinion that the condition means that "whether collectible or not" there still must be *other insurance*.

In the case of *State, ex rel. Duffy, Atty. Genl.*, v. *Western Auto Supply Co.*, 134 Ohio St. 163, the Supreme Court held that:

"2. Insurance, as related to property and liability, is a contract by which one party promises, upon a consideration, to compensate or reimburse the other if he shall suffer loss from a specified cause, or to guarantee or indemnify or secure him against loss from that cause."

If there is no contract to so compensate or reimburse there is, of course, no insurance.

Referring to the condition in the Buckeye State Mutual Insurance Association policy, we find that that "Association shall not be liable for loss occurring * * * while the assured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." In our opinion, in the reference of this condition, the Westchester policy constituted continuously at all times herein pertinent, and from a time prior to the purported inception of the Buckeye State policy, a "contract of insurance, whether valid or not," on property covered by the Buckeye State policy, and the specific exclusion from its coverage of any loss occurring at such time precluded the Buckeye State policy from ever becoming a promise to compensate or reimburse for loss. It could not, therefore, be "other insurance" in the light of, and within the scope of, the condition in the Westchester policy.

Referring to the conditions in the Ohio Farmers Insurance Company policy we find that said policy "shall be suspended and *of no effect*" if, during its term, the insured shall have any other insurance, whether collectible or not, covering the same subject matter. In our opinion, in the reference of this condition, the Westchester policy constituted such "other insurance, whether collectible or not," existing at the beginning of the purported term of the Ohio Farmers Policy and continuously thereafter and which prevented the Ohio Farmers policy from ever becoming effective as a promise to compensate or reimburse for loss. It could not, therefore, be "other insurance"

in the light of, and within the scope of, the condition in the Westchester policy.

We conclude, therefore, that the attempt of Grace to acquire additional insurance from Buckeye State and from Ohio Farmers, conditioned in the manner in these respective policies set forth, did not, in legal effect, operate to create other contracts of insurance and did not cause the condition in the Westchester policy to operate to suspend or void the promise of Westchester in its policy to compensate or reimburse Grace for the loss which he suffered by reason of the burning of the barn which was the subject matter thereof.

As Buckeye State and Ohio Farmers are not parties to this action, our determination as to the validity or legal effect of their policies is only with respect to the contractual rights and obligations existing between Grace and Westchester, and as governed by the subject condition of the Westchester policy, and cannot and shall not stand as being *res judicata* of the issues joined in the respective actions which Grace has filed relating to these subsequent insurers and their policies.

As it appears undisputed that the barn was a total loss, Section 3929.25, Revised Code, if applicable, would then operate to require Westchester to pay Grace the "whole amount mentioned in the policy or renewal, upon which the insurer received a premium." Westchester claims, however, that this statute is not applicable here for it is only applicable "in the absence of any change increasing the risk," and that the mere taking of additional insurance does, as a matter of law, increase the risk. However, the Supreme Court on several occasions has interpreted the phrase, "change increasing the risk," as used in Section 3929.25, Revised Code, as pertaining solely to a change in the physical condition of the premises. *Sun Fire Office of London* v. *Clark*, 53 Ohio St. 414, 427, and *Webster* v. *Dwelling House Ins. Co.*, 53 Ohio St. 558.

We are, therefore, of the opinion that the Court of Common Pleas committed error prejudicial to the plaintiff-appellant in that part of its judgment finding in favor of the defendant on the issues joined in relation to the loss of the barn, and that for such prejudicial error that part of such judgment is revers-

ed and vacated. There being no error claimed and none found as to that part of the judgment pertaining to the loss of the hay in the barn, the same is permitted to stand. There being no dispute as to any of the facts pertaining to the barn loss, this court, by way of rendering the judgment which the trial court should have rendered and by way of modification of the judgment which it did render, renders final judgment in favor of the plaintiff and against the defendant for an amount equal to the sum of the amount found and determined by the jury for the hay loss plus interest ($5,235.70), and the amount of $12,000 plus interest thereon at 6 per cent from September 14, 1961, to July 10, 1963 ($13,312.00), the total judgment ($18,547.70) to bear interest at the rate provided by law until satisfied.

*Judgment accordingly.*

MIDDLETON, P. J., and YOUNGER, J., concur.